UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MICRO FINES RECYCLING OWEGO, LLC

        Plaintiff,

  -against-             3:17-CV-1315 (LEK/DEP)

FERREX ENGINEERING, LTD., *et al.*,

        Defendants.

## MEMORANDUM-DECISION AND ORDER

**I. INTRODUCTION**

In this diversity action, plaintiff Micro Fines Recycling Owego, LLC brings claims of rescission, breach of express warranty, and breach of implied warranty against defendants Ferrex Engineering, Ltd. ("Ferrex"), 1199541 Ontario Inc. ("1199541"), and Tom Clarkson. Dkt. No. 13 ("Amended Complaint") ¶¶ 39–56. Plaintiff also alleges that 1199541 and Clarkson are alter egos of Ferrex and should be held liable for Ferrex's wrongdoing. Id. ¶¶ 57–66. Plaintiff alleges that Ferrex sold Plaintiff a faulty industrial dryer and then failed to uphold its implied and express warranty. Id. ¶¶ 1–56. Plaintiff further alleges that 1199541 and Clarkson dominated Ferrex in a way that ensured Ferrex could avoid liability. Id. ¶¶ 57–66.

Ferrex has not answered the Amended Complaint or the Original Complaint, Dkt. No. 1 ("Complaint"), and has not appeared in this case. At Plaintiff's request, the Clerk entered default as to Ferrex. Dkt. Nos. 20 ("Default Request"), 22 ("Entry of Default"). Clarkson and 1199541 now move to (1) dismiss the Amended Complaint for lack of personal jurisdiction; and (2) dismiss all claims against 1199541 for failure to state a claim. Dkt. Nos. 32 ("Defendants' Motion"), 32-1 ("Defendants' Memorandum"); see also Dkt. Nos. 34 ("Plaintiff's Opposition"),

38 ("Defendants' Reply"). Plaintiff has also requested an evidentiary hearing regarding Plaintiff's damages as to Ferrex. Dkt. No. 39 ("Letter Motion").

For the reasons that follow, Defendants' Motion is denied. Plaintiff's Letter Motion is referred to Magistrate Judge Peebles for consideration.

## II. BACKGROUND

Plaintiff is a New York limited liability company with its principal places of business in Owego, New York. Am. Compl. ¶ 1. Plaintiff is in the business of recycling metal materials, and to operate its recycling line, Plaintiff must remove moisture from the materials it recycles. Id. ¶¶ 8, 10. Ferrex is a Canadian company with its principal place of business in Ajax, Ontario. Id. ¶ 2. Through Plaintiff's parent company, SGM Magnetics Corporation ("SGM"), Plaintiff paid Ferrex $435,500 for a rotary dryer and associated equipment. Id. ¶¶ 9, 11. The purchase included a fifteen-month express warranty from the date of shipment, September 13, 2016. Id. ¶¶ 14–15. Plaintiff started operating the dryer in March 2017, and it began malfunctioning shortly thereafter. Id. ¶¶ 17–18. Plaintiff contacted Ferrex, which made multiple unsuccessful attempts to resolve the issues, including sending subcontractors and employees to Owego. Id. ¶¶ 19–29. On November 6, 2017, Ferrex suggested additional repairs, but stated that it would not pay for them. Id. ¶ 30. That same day, Plaintiff formally rejected the dryer, requested Ferrex remove the equipment, and demanded a full refund.[1] Id. ¶ 33. Plaintiff filed suit against Ferrex on December 4, 2017. Dkt. No. 1 ("Complaint").

In its Amended Complaint, Plaintiff alleges that Ferrex is merely a shell, and that the newly added defendants—Clarkson and 1199541—are really in control. Am. Compl. ¶ 36.

---

[1] The Amended Complaint does not make clear whether Plaintiff had received Ferrex's November 6 letter when it rejected the dryer.

Clarkson is the sole shareholder of 1199541, a Canadian corporation whose principal place of business is, like Ferrex, in Ajax, Ontario. Id. ¶¶ 3–4. Clarkson is also Ferrex's president. Id. Further, Plaintiff alleges that Clarkson is Ferrex's sole shareholder.[2] Id. 1199541, in turn, is Ferrex's creditor. Id. 1199541 and one other company—also controlled by Clarkson—are Ferrex's only creditors, and in 2017 Ferrex owed them $531,692. Id. ¶ 61. Ferrex had cash and receivables of approximately $466,000 and retained earnings of $42,000 that year. Id.

After the original complaint was filed, Ferrex's counsel stated to Plaintiff "verbally and through email" that it would not defend the lawsuit and that "any judgment rendered against Ferrex would be uncollectible because Ferrex had no assets and Mr. Clarkson—who is the sole shareholder of both Ferrex and Defendant 1199541—would simply call 1199541's loan and collect on its security interest, leaving no assets for Micro Fines to collect on." Id. ¶ 36. Plaintiff further alleges that Ferrex's counsel stated in a telephone conference that "1199541 could simply call its note, Ferrex could close its doors, and Clarkson could re-open under another corporate name immediately." Id. ¶ 64. Plaintiff filed its Amended Complaint on March 18, 2018. Am. Compl.

## III. LEGAL STANDARD

### A. Lack of Personal Jurisdiction

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of showing that the court has jurisdiction over the defendants. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566

---

[2] Clarkson does not dispute he is the sole shareholder of 1199541 and Ferrex's president. But he asserts that he is only a 50% shareholder of Ferrex, and that another company in which he has no interest owns the remaining 50%. Dkt. 32-2 ("Clarkson Affidavit") ¶¶ 4–7. As discussed later, the Court considers information outside the pleadings only in the context of the 12(b)(2) motion.

(2d Cir. 1996). The court is not limited to considering "the four corners of the complaint." Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 225 (S.D.N.Y. 2013). "[T]he Court may also rely on submitted affidavits and other supporting materials submitted in relation to the motion." Id. When a court relies only upon the pleadings and supporting affidavits, a plaintiff need only make a prima facie showing of personal jurisdiction over a defendant. Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005).

"A prima facie showing of jurisdiction 'does not mean that plaintiff must show only some evidence that defendant is subject to jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction.'" Tamam v. Fransabank Sal, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (quoting Bellepointe, Inc. v. Kohl's Dep't Stores, Inc., 975 F. Supp. 562, 564–65 (S.D.N.Y. 1997)). Pleadings that assert only "conclusory non-fact-specific jurisdictional allegations" or state a "legal conclusion couched as a factual allegation" do not meet this burden. Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998). While a court should assume the truth of all well-pleaded factual allegations that support a finding of personal jurisdiction, Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990), it should "not draw 'argumentative inferences' in the plaintiff's favor," Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994) (quoting Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)). "[U]ntil an evidentiary hearing is held, 'a *prima facie* showing suffices, *notwithstanding any controverting presentation by the moving party,* to defeat the motion[.]'" Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 86 (2d Cir. 2013) (emphasis in original) (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)).

**B. Failure to State a Claim**

4

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint be dismissed if it "fail[s] to state a claim on which relief may be granted." To state a valid claim, a complaint must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 8(a)(2). The Court may disregard "legal conclusions couched as factual allegations" that are "devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, a court must take the "well-pleaded factual allegations" as true, id. at 679, and "draw[ ] all reasonable inferences in the plaintiff's favor," Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). To "'nudge[ ] [the plaintiff's] claims across the line from conceivable to plausible,'" the facts need only "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" Citizens United v. Schneiderman, 882 F.3d 374, 380 (2d Cir. 2018) (quoting Twombly, 550 U.S. at 556–57, 570).

When deciding a motion to dismiss under Rule 12(b)(6), "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). It may also consider "documents or information contained in [the] defendant's motion papers if the plaintiff has knowledge or possession of the material and relied on it in framing the complaint," as well as "facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." Envtl. Servs. v. Recycle Green Servs., 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (quoting In re Merrill Lynch & Co., 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003)).

**IV. DISCUSSION**

    **A. Personal Jurisdiction**

Plaintiff argues that the Court has direct personal jurisdiction over Ferrex, and that it has personal jurisdiction over Clarkson and 1199541 on an alter ego—i.e. corporate veil-piercing—theory of liability. Pl.'s opp. at 4–11.

*1. Personal Jurisdiction over Ferrex*[3]

"A federal district court sitting in diversity may exercise personal jurisdiction to the same extent as a state court of general jurisdiction in the state in which the court sits." GEM Advisors, Inc. v. Corporacion Sidenor, S.A., 667 F. Supp. 2d 308, 318 (S.D.N.Y. 2009); Fed. R. Civ. P 4(k)(1)(A). The Court engages in a two-part inquiry to determine if it may exercise personal jurisdiction. "First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." Metro. Life, 84 F.3d at 567.

N.Y. C.P.L.R. 302(a)(1) provides personal jurisdiction over a non-domiciliary that "transacts any business within [New York] or contracts anywhere to supply goods or services in the state." The party "need not be physically present in the state at the time of service" and a single transaction can be sufficient "so long as the relevant cause of action also arises from that transaction." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 787 (2d Cir. 1999).

---

[3] No defendant has disputed Plaintiff's claim that this Court has personal jurisdiction over Ferrex. However, when "a defendant declines to appear and the plaintiff moves for default judgment, a court 'may first assure itself that it has personal jurisdiction over the defendant' before it grants the plaintiff's motion." Hua Chen v. Honghui Shi, No. 09-CV-8920, 2013 WL 3963735, at *4 (S.D.N.Y. Aug. 1, 2013) (quoting Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Grp., 619 F.3d 207, 213 (2d Cir. 2010)). While this is not a motion for default judgment, the Court first ensures it has personal jurisdiction over Ferrex because Plaintiff relies on Ferrex's conduct to establish jurisdiction over Clarkson and 1199541.

Plaintiff alleges that Ferrex "engag[es] in consistent consulting work in Owego, New York, sell[s] equipment into Owego, New York, and send[s] sales and maintenance representatives, and repair technicians into Owego, New York." Am. Compl. ¶ 6. Specific to the transaction at hand, Plaintiff alleges that Ferrex contracted with New York-based Plaintiff and delivered the warrantied dryer to Plaintiff in New York. Id. ¶¶13–15. Plaintiff corresponded repeatedly with Ferrex about issues with the dryer, and Ferrex sent to New York a subcontractor to work on it and later employees to inspect it. Id. ¶¶ 19–20, 22, 24–25, 29. This dispute arises directly from this transaction and thus the Court may exercise long-arm jurisdiction over Ferrex under N.Y. C.P.L.R. 302(a)(1). See Nat'l Elec. Sys., Inc. v. City of Anderson, 601 F. Supp. 2d 495, 499 (N.D.N.Y. 2009) ("302(a)(1) will serve as a basis for personal jurisdiction so long as plaintiff shows that defendant engaged in purposeful activity *related to the contract* and within New York *either before or after* the contract was executed.") (emphasis in original); see also Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 170 (2d Cir. 2010) ("[A] single act of shipping a [product] might well be sufficient, by itself, to subject [an out of state party] to the jurisdiction of a New York court under section 302(a)(1).").

"Due Process requires the defendant to have maintained 'minimum contacts' with the state and that the exercise of jurisdiction over the defendant comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable under the circumstances of the particular case." Metro. Life, 84 F.3d at 568 (quoting Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945)).

> The Supreme Court has set forth five factors that must be considered when determining the reasonableness of a particular exercise of jurisdiction: A court must consider [1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief. It must also weigh in its determination [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and

7

[5] the shared interest of the several States in furthering fundamental substantive social policies.

Chloe, 616 F.3d at 173 (quoting Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty., 480 U.S. 102, 113 (1987).

Ferrex has sufficient minimum contacts with New York because Ferrex sold and delivered its product into New York, maintained a relationship with its customer there, and sent employees to New York in furtherance of that contract. "[T]he Supreme Court has noted that 'parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.'" Chloe, 616 F.3d at 171–72 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985); see also Minnie Rose LLC v. Yu, 169 F. Supp. 3d 504, 515 (S.D.N.Y. 2016) (holding that a Hong-Kong based defendant had sufficient minimum contacts with New York because she contracted with a New York based plaintiff, sent shipments to New York, and visited New York on related business).

The five reasonableness factors indicate that exercising personal jurisdiction does not offend traditional notions of fair play and justice. While there would be some burden on Ferrex if it was forced to litigate in New York, the burden is slight because "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." Metro. Life, 84 F.3d at 574. The second factor favors Plaintiff because "[a] State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King, 471 U.S. at 473 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957). The third factor favors Plaintiff because Plaintiff is based in New York. The fourth factor also favors Plaintiff because the witnesses and evidence are likely located primarily in New York. Finally, there does not appear to be any social

policy that dictates the Court should not exercise jurisdiction. Thus, the exercise of jurisdiction is reasonable for the purposes of due process. See Chloe, 616 F.3d at 173 (holding that, despite minor inconvenience to out of state defendant that sold products into New York, exercise of personal jurisdiction was reasonable based on the interests of the forum state and plaintiff's interest in obtaining relief).

*2. Clarkson and 1199541: Personal Jurisdiction through veil-piercing*

Plaintiff does not allege that the Court has direct personal jurisdiction over Clarkson and 1199541. Rather, it argues the Court may pierce the corporate veil and attribute Ferrex's contacts to Clarkson and 1199541. Pl.'s opp. at 6. Under New York law, if a court has personal jurisdiction over a defendant, it may also exercise personal jurisdiction over an alter ego defendant. S. New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010). "It is also well established that the exercise of personal jurisdiction over an alter ego corporation does not offend due process." Id.

a. New York Law[4]

---

[4] The law of Ferrex's place of incorporation, Ontario, Canada, could govern part or all of the dispute. See In re Lyondell, 543 B.R. at 139 n.38 (noting that some courts "have engaged in a choice of law analysis to decide which law to apply to an alter ego theory of *jurisdiction,* usually finding that the law of the corporation's state of incorporation governs" while others have "distinguish[ed] the analysis for 'alter ego' *liability* and for 'alter ego' *jurisdiction,* and . . . apply either the law governing the interpretation of the jurisdictional statute or federal due process jurisprudence") (emphasis in original). But outside of Defendants' footnote recognizing the potential relevance of Canadian law, Defs.' mem. at 11 n.2, the parties cite only New York law. Accordingly, the Court applies New York law. See, e.g., Golden Pac. Bancorp v. F.D.I.C., 273 F.3d 509, 514 (2d Cir. 2001) ("The parties' briefs assume that New York substantive law governs . . . and such implied consent is, of course, sufficient to establish the applicable choice of law.").

New York law provides a two-pronged test to pierce the corporate veil: "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997).

There is some question as to whether a plaintiff must satisfy both prongs to pierce the veil. Compare Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd., 909 F.2d 698, 703 (2d Cir. 1990) ("New York law allows the corporate veil to be pierced *either* when there is fraud *or* when the corporation has been used as an alter ego[.]") (emphasis in original) with Am. Fuel 122 F.3d at 134 ("While complete domination of the corporation is the key to piercing the corporate veil, . . . such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward [the party seeking piercing] is required.") (quoting Morris v. New York State Dep't of Taxation & Fin., 623 N.E.2d 1157, 1161 (N.Y. 1993)). In the jurisdictional context, courts in the Second Circuit generally have not required an allegation of fraud or other wrong. The "standard is relaxed where the *alter ego* theory is used not to impose liability, but merely to establish jurisdiction." Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd., 475 F. Supp. 2d 456, 459 (S.D.N.Y. 2007). "In such an instance, the question is only whether the allegedly controlled entity 'was a shell' for the allegedly controlling party; it is not necessary to show also 'that the shell was used to commit a fraud.'" Id. (quoting Marine Midland Bank, 664 F.2d at 904). In any event, as detailed below, Plaintiff successfully alleges both complete domination and that such domination was used to commit a wrong. Thus, the Court need not delve into whether "fraud or other wrong" is a required element at the jurisdictional and liability stage, only the liability stage, or neither.

b. Domination

While "[c]laims of alter ego status need only satisfy th[e] liberal notice pleading standard [of Fed. R. Civ. P. 8(a)(2)]," the plaintiff "'must allege specific facts' showing that one corporation exercised dominion over another." Sysco Food Serv. of Metro New York, LLC v. Jekyll & Hyde, Inc., No. 08-CIV-2958, 2009 WL 4042758, at *3 (S.D.N.Y. Nov. 17, 2009) (quoting Portnoy v. Am. Tobacco Co., No. 96/16323, 1997 WL 638800, at *4 (N.Y. Sup. Ct. Sept. 26, 1997)).[5] There are several factors relevant to domination, including:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.,* issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 139 (2d Cir. 1991). Courts consider the Passalacqua Builders factors for alter ego claims against individuals, Shantou Real Lingerie Mfg. Co. v. Native Grp. Int'l, Ltd., No. 14-CV-10246, 2018 WL 1738334, at *4 (S.D.N.Y. Mar. 14, 2018), and corporations, N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp., 766 F.3d 212, 224–25 (2d Cir. 2014). "No one factor is decisive." Freeman v. Complex Computing Co., 119 F.3d 1044, 1053 (2d Cir. 1997).

---

[5] Plaintiff suggests that at the jurisdictional stage, the domination prong can be satisfied by alleging "greater than normal control." Pl.'s opp. at 6. However, the case Plaintiff quotes for this proposition is discussing federal common law, and that same case later notes that under New York law the relevant jurisdictional inquiry is whether the "allegedly controlled entity was a shell." In re Lyondell 543 B.R. at 142–43.

11

Plaintiff makes several specific allegations pertaining to 1199541 and Clarkson's domination of Ferrex. Plaintiff alleges that Clarkson is the sole shareholder and president of Ferrex; that in 2016 Ferrex sold Plaintiff a "$450,000 piece of machinery with an explicit warranty" but in 2017 had retained earnings of only $42,000, cash and receivables of $466,000, and liabilities of $531,692; that 1199541 is "the sole creditor of Ferrex, and holds a perfected security interest in the assets of Ferrex;" that Clarkson is 1199541's sole shareholder; that Clarkson is also the sole shareholder of Ferrex's only other creditor;[6] and that Ferrex's counsel stated Ferrex would be judgment proof if Plaintiff persisted in its lawsuit because 1199541 would call its loan, Ferrex would be left with no assets, and "Clarkson could re-open under another corporate name immediately". Am. Compl. ¶¶ 36, 58–64.

Additional information—available for consideration on a 12(b)(2) motion—lends some support to the allegations about the statements from Ferrex's counsel. Attached to Plaintiff's Opposition is a January 2018 email, apparently from Ferrex's counsel to Plaintiff's, which states that Ferrex will not defend the lawsuit, attaches the security agreement between Ferrex and 1199541, and cautions that "[a]s I mentioned in our December 21, 2017 telephone conversation, in the event SGM [Plaintiff's parent company] proceeds with the lawsuit and obtains judgment, 1199541 will likely seek to enforce its security against Ferrex." Dkt. Nos. 34-1 ("January 2018 Email"), 34-2 ("Security Agreement"). Also attached to the email is an unaudited balance sheet showing that in 2017 Ferrex owed $432,219 to 1199541 and $22,778 to another company, 1757084 Ontario Inc. Dkt No. 34-4 ("Financial Statements").

---

[6] 1199541 cannot, of course, be Ferrex's sole creditor if Ferrex has another creditor. The Financial Statements, infra, also suggest Ferrex has another creditor.

Defendants reference additional financial information to dispute Plaintiff's characterization of Ferrex's financials, including Ferrex's increased gross revenue and retained earnings in 2017. Defs.' reply at 5; Financial Statements. Defendants also contend that Clarkson is only a 50% shareholder of Ferrex.[7] But while Defendants may raise some question as to the strength of the allegations pertaining to common ownership, overlap between ownership and officers, and undercapitalization, the alleged warning from Ferrex's counsel suggests complete domination. It shows that the entities do not deal at arm's length—Ferrex's counsel was allegedly speaking on behalf of 1199541 and its intention to call the loan. And it indicates that Ferrex lacks business discretion. Rather than defend itself in court, Ferrex sits idle while 1199541—owed solely by the president and (at least 50%) owner of Ferrex—simply calls its loan. Clarkson and 1199541 dictate Ferrex's fate, and their willingness to sacrifice Ferrex and start anew suggests that Ferrex is not a company in its own right. See Ridge Clearing & Outsourcing Sols., Inc. v. Khashoggi, No. 07-CV-6611, 2011 WL 3586455, at *9 (S.D.N.Y. Aug. 12, 2011) (holding that defendant was liable because, in part, he "exercised nearly unbridled discretion" over the dominated entity's business activities) aff'd sub nom. Broadridge Sec. Processing Sols., LLC v. Khashoggi, 507 F. App'x 57 (2d Cir. 2013); Freeman v. Complex Computing Co., 931 F. Supp. 1115, 1120 (S.D.N.Y. 1996) (finding domination easily established when company's founder, "receive[d] the overwhelming bulk of its gross revenues, . . . had the

---

[7] Clarkson's affidavit states he "hold[s] a one-half interest in Ferrex" and that "[a]nother company, in which [he] ha[s] no ownership interest, owns the remaining one-half interest in Ferrex." Clarkson Aff. ¶ 6. While the Court assumes the truth of all well-pleaded factual allegations that support a finding of personal jurisdiction, Ball, 902 F.2d at 197, it does note that Plaintiff's Opposition refers to Clarkson as Ferrex's "one-half owner." Pl.'s opp. at 12. But whether Clarkson owns half or all of Ferrex does not significantly alter this analysis. Either way, Ferrex is helpless as 1199541, owned solely by Clarkson, decides whether to call its loan, resulting in Clarkson and 1199541 firmly in control of Ferrex's assets and leaving little left over for any other Ferrex shareholder.

sole power of signature over its bank accounts, . . . [and] the sole interest in the economic achievement of the corporation") aff'd in relevant part 119 F.3d 1044 (2d Cir. 1997).

Defendants argue that because Clarkson allegedly "completely dominated" Ferrex, 1199541 cannot, by definition, have also dominated Ferrex. Defs.' mem. at 15. This argument misconstrues alter ego law. It is true that most of Plaintiff's allegations focus on Clarkson's control, and that Plaintiff does not articulate independent theories of alter ego liability for each defendant. But Plaintiff is not required to do so. Plaintiff alleges that Clarkson and 1199541 dominated Ferrex in tandem—Defendants' attempt to isolate 1199541's liability ignores the interconnected nature of the alleged scheme. See Solow v. Domestic Stone Erectors, Inc., 645 N.Y.S.2d 17, 17 (N.Y. App. Div. 1996) ("The complaint clearly indicates that plaintiff seeks to enforce a judgment it obtained against the first-named corporate defendant against the other two corporate defendants and the individual defendant on the theory that the individual used his domination and control over all three corporations to transfer assets of the debtor corporation to the other two corporations so as to make the firm incapable of honoring its obligation to plaintiff. These allegations are sufficient to warrant treating all four defendants as a single personality for purposes of enforcement of plaintiff's judgment.").

### c. Fraud or Wrong

"The second component of alter ego liability, fraud or wrong causing injury, can be satisfied by showing a 'breach of a legal duty, or a dishonest and unjust act in contravention of [the] plaintiff's legal rights.'" GEM Advisors, 667 F. Supp. 2d at 324 (quoting Elec. Switching Indus., Inc. v. Faradyne Elecs. Corp., 833 F.2d 418, 424 (2d Cir. 1987). "Because the predicate for application of corporate veil piercing is the commission of a fraud *or* wrong, not every claim based on the theory must meet the more exacting standards of Rule 9(b)." Network Enterprises,

14

Inc. v. APBA Offshore Prods., Inc., No. 01-CV-11765, 2002 WL 31050846, at *5 (S.D.N.Y. Sept. 12, 2002) (emphasis in original).

Count IV of the Amended Complaint—ambiguously titled "Fraud and Alter Ego"—raises a question of whether Plaintiff intends to allege common law fraud or merely discusses fraud/wrong as an aspect of veil-piercing. Am. Compl. ¶¶ 59, 65. But because Plaintiff clearly alleges a wrong, the Court need not analyze whether Plaintiff properly pleads fraud as well. See Solow, 645 N.Y.S.2d at 17 ("The references to fraud in the complaint do not purport to be separate causes of action for common-law fraud but are elements of plaintiff's claim to pierce the corporate veil.").

Plaintiff alleges that Defendants committed a wrong resulting in injury—Plaintiff's inability to enforce its warranty—by "enter[ing] into a scheme [that ensured that] if Ferrex were ever called to pay any warranty claims like the one in this case, it would have no assets to collect against," Am. Compl. ¶ 60, because "1199541 could simply call its note, Ferrex could close its doors, and Clarkson could re-open under another corporate name immediately," id. ¶ 64. Claims that a company shifted assets to avoid judgment allege a wrong. See Smoothline Ltd. v. N. Am. Foreign Trading Corp., No. 00-CV-2798, 2002 WL 273301, at *6 (S.D.N.Y. Feb. 27, 2002) ("UAL's alleged shifting of assets out of Smoothline has left Smoothline effectively judgment proof. This conduct is sufficient to constitute fraud or wrong for purposes of veil-piercing.").

Defendants assert there is no alleged wrong, and more specifically, no alleged "post-tort activity," because Plaintiff does not actually claim asset shifting, only the threat of it. Defs.' reply at 4. In Kinetic Instruments, discussed at length by both parties, the court held there was a properly alleged wrong when the defendant told the plaintiff that, no matter the outcome of the lawsuit, the defendant "had taken measures to see that [the plaintiff] will never get anything."

15

Kinetic Instruments, Inc. v. Lares, 802 F. Supp. 976, 986 (S.D.N.Y. 1992). Defendants attempt to draw a fine distinction on the grounds that Ferrex's counsel stated it "could" or "would" take such measures, not that it "had." Defs.' reply at 4–5. But Plaintiff claims Defendants have already taken measures to avoid liability—Defendants set up a corporate structure that allowed them to dominate Ferrex with asset shifting in mind. The threat to call the loan and re-open under a different name merely evidences this. And at least thus far, Defendants have succeeded in preventing Plaintiff from enforcing its warranty with Ferrex. While the security agreement between 1199541 and Ferrex precedes this dispute by several years, Security Agreement; Defs.' reply at 5, Defendants need not have hatched the scheme with a particular plaintiff in mind.[8] See Thrift Drug v. Prescription Plan Serv. Corp., 1 F. Supp. 2d 387, 388 (S.D.N.Y. 1998) ("While it is highly doubtful that [defendant] had any animus against this particular plaintiff, the plaintiff was clearly a part of the class of potential creditors against whom [defendant]'s use of UPA (and the other "phantom" corporations) was directed.").

Defendants' reliance on Vance Bioenergy, Defs.' mem. at 12, fails to account for all of Plaintiff's allegations. In Vance Bioenergy, the plaintiff alleged that the company was undercapitalized, that the individual defendant owned a 50% share in the company, and that the company "structured its bank financing in such a manner that [the company] could perform its obligations only in situations where [the company] stood to make a profit on any given transaction." Vance Bioenergy Sdn. Bhd. v. World Energy Alternatives, LLC, No. 08-CV-9330, 2010 WL 11595107, at *1 (S.D.N.Y. Jan. 19, 2010). The court held that the complaint failed to allege the defendant "dominated or undercapitalized WEA for the purpose of defrauding

---

[8] Defendants repeatedly emphasize that Ferrex "voluntarily disclosed" 1199541's security interest to Plaintiff, but do not explain how the disclosure served any purpose other than to lend credence to the warning from Ferrex's counsel. Defs.' reply at 5.

plaintiff." Id. at *2. But the allegations in Vance Bioenergy lack any allegation comparable to Ferrex counsel's threat, which, in contrast to Vance Bioenergy, suggests that Clarkson and 1199541 dominated Ferrex so that they could avoid accountability to someone like Plaintiff. See Thrift Drug, 1 F. Supp. 2d at 388.

**B. Failure to State a Claim – 1199541's 12(b)(6) Motion**

1199541 also moves to dismiss under 12(b)(6), arguing that Plaintiff fails to state a claim under the instrumentality theory. Defs.' mem. at 15–21. But Plaintiff does not rely on an instrumentality theory. Am. Compl. Plaintiff's claim against 1199541, like its claim against Clarkson, rests on an alter ego theory of liability. However, 1199541's Motion implies—and its Reply clearly states—that 1199541 does not believe Plaintiff states a claim against 1199541 under the alter ego theory. Defs.' mem. at 15–16; Defs.' reply at 6. Thus, the Court considers whether Plaintiff states a claim against 1199541 under the alter ego theory.

The legal standard for a 12(b)(6) motion is stated above. As with the 12(b)(2) motion, there is no need to allege fraud. Network Enterprises, Inc., 2002 WL 31050846, at *5. But unlike the 12(b)(2) motion, the Court's analysis is limited to the complaint; documents attached to the motions are not considered. See Brown v. Marriott Int'l, Inc., No. 14CV5960SLTMDG, 2017 WL 4484194, at *13 (E.D.N.Y. Sept. 29, 2017) ("[I]n ruling on a Rule 12(b)(6) motion, the Court is limited to reviewing the 'facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference.'") (quoting Newman v. Schwartz, 102 F.3d 660, 662 (2d Cir. 1996)). New York's alter ego law applies as it did in the jurisdictional context. As discussed above, courts are more likely to require that the plaintiff allege a wrong resulting in injury when analyzing liability. However, as in the jurisdictional analysis, both alter ego prongs are met.

Plaintiff plausibly states that 1199541 exercised complete control. As discussed earlier, the Amended Complaint contains factual allegations pertaining to common ownership, overlap between ownership and officers, undercapitalization, failure to deal at arm's length, and lack of business discretion. Am Compl. ¶¶ 36, 58–64. The threat that 1199541 will call the loan and shut Ferrex down in response to the lawsuit remains significant, and "accepting all well-pleaded factual allegations as true," Heptagon Creations, Ltd. v. Core Grp. Mktg. LLC, 507 F. App'x 74, 75 (2d Cir. 2013), is more than sufficient at the 12(b)(6) stage.

Plaintiff also plausibly states that 1199541 committed a wrong that harmed Plaintiff. This analysis also proceeds as it did in the jurisdictional section: a scheme that allows Defendants to shift assets and avoid liability to Plaintiff—like the one alleged in the Amended Complaint—constitutes a wrong. Smoothline Ltd. 2002 WL 273301 at *6 (holding that asset shifting constitutes a wrong for purposes of veil piercing); Thrift Drug, 1 F. Supp. 2d at 388.

Defendants appear to argue that Plaintiff's claims against 1199541 should be assessed under an instrumentality theory, rather than alter ego, because 1199541 is merely a lender for Ferrex. But—in addition to the fact that Plaintiff makes almost no allegations regarding 1199541's lending activity—1199541 exerts control far more sweeping than simply influencing Ferrex through its lending. Along with Clarkson, 1199541 controls whether Ferrex stays in business or sacrifices itself to protect Clarkson and 1199541's assets. Defendants' attempt to isolate the claims against 1199541 fair no better on the 12(b)(6) motion. See Weinreich v. Sandhaus, 850 F. Supp. 1169, 1179 (S.D.N.Y.) ("Moreover, if [the plaintiff] could only pursue [a corporate defendant] under this cause of action, he would essentially be denied any recovery because of [the individual defendant's] control of both [corporate defendants].") amended 156 F.R.D. 60 (S.D.N.Y. 1994). Perhaps Ferrex's counsel made an empty threat, or perhaps he was

18

merely speculating about an independent decision 1199541 would make. But Plaintiff has plausibly stated that this is not the case and is entitled to discovery.

### C. Damages Hearing

On April 8, 2019, Plaintiff filed a letter motion requesting an evidentiary hearing on the issue of damages as to Ferrex. Plaintiff requests this, "whether live or by written submission, so it can present evidence of its damages and obtain a final judgment as to Ferrex." Pl's. Letter Mot. Plaintiff's request is referred to Magistrate Judge Peebles for consideration.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. No. 32) for lack of personal jurisdiction is **DENIED**; and it is further

**ORDERED**, that 1199541's Motion to Dismiss (Dkt. No. 32) for failure to state a claim is **DENIED**; and it is further

**ORDERED**, that Plaintiff's request for an evidentiary hearing on damages (Dkt. No. 39) is referred to Magistrate Judge Peebles for consideration; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

DATED:  April 22, 2019
        Albany, New York

Lawrence E. Kahn
U.S. District Judge