UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MICRO FINES RECYCLING OWEGO
LLC

         Plaintiff,

 -against-            3:17-CV-1315 (LEK/ML)

FERREX ENGINEERING, LTD., *et al.*,

         Defendants.

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Micro Fines Recycling Owego LLC has sued defendants Ferrex Engineering, Ltd. ("Ferrex"), 1199541 Ontario Inc. ("1199541"), and Tom Clarkson. Dkt. No. 13 ("Amended Complaint") ¶¶ 1–56. Plaintiff alleges that that Ferrex sold Plaintiff a faulty industrial dryer and that 1199541 and Clarkson are also liable as Ferrex's alter egos. Id.

Before the Court is Plaintiff's objection to a report-recommendation by the Honorable Miroslav Lovric, United States Magistrate Judge, Dkt. Nos. 53 ("Report-Recommendation"); 54 ("Objection"), as well as Plaintiff's motion for a default judgment against Ferrex, Dkt. No. 57 ("Default Motion").

For the reasons that follow, the Court grants in part and denies in part Plaintiff's Default Motion. This moots Plaintiff's objections to the Report-Recommendation, which the Court then adopts in its entirety.

### II. BACKGROUND

The Court detailed the factual allegations in its April 22, 2019 Memorandum-Decision and Order, familiarity with which is assumed. Dkt. No. 40 ("April 2019 MDO"). To recap

briefly, Ferrex sold Plaintiff an allegedly faulty industrial dryer. Am Compl. ¶ 9. After Plaintiff sued Ferrex, Ferrex's counsel informed Plaintiff that Ferrex would not defend the suit and that if Plaintiff obtained a judgement, Ferrex, which is controlled by Clarkson, would simply move its assets to 1199541, which is also controlled by Clarkson. Id. ¶ 36. Unsurprisingly, Plaintiff then added 1199541 and Clarkson as defendants and obtained a clerk's entry of default against Ferrex. See id.; Dkt. No. 22 ("Clerk's Entry of Default"). In April 2019, the Court denied Clarkson and 1199541's motion to dismiss for lack of personal jurisdiction on the grounds that Plaintiff had sufficiently alleged, for jurisdictional purposes, that 1199541 and Clarkson were alter egos of Ferrex. April 2019 MDO at 19.

The procedural history subsequent to the April 2019 MDO is murkier. The confusion appears to stem from competing interpretations of a letter filed by Plaintiff on April 8, 2019, two weeks before the publication of the April 2019 MDO. In that uncaptioned letter, Plaintiff "request[ed] that the Court schedule an evidentiary Hearing with respect to the issue of Plaintiff's damages as to Defendant Ferrex." Dkt. No. 39 ("Letter Motion") at 1. In the Court's April 2019 MDO, the Court referred this request to the Honorable David E. Peebles, United States Magistrate Judge, for consideration.

In a telephone conference between the parties and Judge Peebles on April 26, 2019, Judge Peebles set a briefing schedule for Plaintiff's Letter Motion, and the parties agreed that the issue of damages could be decided on the papers. Dkt. Entry for April 26, 2019. On May 5, 2019, Plaintiff filed an affidavit and exhibits in support of its claim for damages. Dkt. Nos. 41 ("Piela Affidavit"), 41-1 to -3 ("Exhibits A–C"). On May 24, 2019, Ferrex made its first appearance in the case and, along with Clarkson and 1199541, filed a response labeled "Defendants' Memorandum in Opposition to Plaintiff's Request for Entry of Judgment on Default." Dkt. No.

47 ("Letter Motion Response"). Plaintiff then filed a reply captioned "Plaintiff's Reply in Support of Affidavit for Damages and Entry of Default Judgment." Dkt No. 51 ("Letter Motion Reply"). The case was then reassigned from Magistrate Judge Peebles to Magistrate Judge Lovric. Dkt. No. 52.

Judge Lovric denied the Letter Motion as premature. R. & R. at 5. Judge Lovric reasoned that there could not be a hearing on damages because "there has not been an entry of a default judgment against Ferrex nor has Plaintiff filed a motion for default judgment pursuant to Fed. R. Civ. P. 55(b), which would provide notice and an opportunity for Ferrex to show cause why the Court should not enter default judgment." Id.

Plaintiff objected to the Report-Recommendation, arguing that while "Micro Fines may have confused Magistrate Lovric by neglecting to file the Letter Motion as a more formal motion under Rule 55(b), . . . the record clearly shows that the parties were unmistakably under the impression that the Court was treating the letter motion as a formal motion for entry of default judgment." Obj. at 4. Plaintiff noted that both parties had filed papers captioned as briefs pertaining to an entry of default judgement and that Judge Peebles, in granting an extension request, had also referred to the pending Letter Motion as a "request for entry of a default judgment against Ferrex." Id. (quoting Dkt. No. 45).

That same day, Plaintiff requested leave to file a formal motion for default judgment. Dkt. No. 55. The Court granted the request, Dkt. No 56, and Plaintiff filed the Default Motion—captioned unambiguously as a "Motion for Default Judgment Pursuant to Fed. R. Civ. P. 55(b)(2)"—on August 15, 2019. Mot. for Default Judgment at 1; see also Dkt. No. 57-1 ("Default Motion Memorandum"). In the Default Motion Memorandum, Plaintiff requested that the Court consider the papers previously filed by both sides in reference to the Letter Motion,

3

which the parties had treated as a motion for default judgment. Default Mot. Mem. at 1 n.1.
Defendants filed a response to the Default Motion, which also incorporated Defendants'
previously filed Letter Motion Response. Dkt. No. 61 ("Default Motion Response") at 2 n.2.
Plaintiff filed a reply in support of its Default Motion. Dkt. No. 62 ("Default Motion Reply").

## III. LEGAL STANDARD

### A. Default Judgment

After the Clerk has filed an entry of default against a party that has failed to plead or otherwise defend, a court may enter default judgment upon application of the opposing party. Fed. R. Civ. P. 55(b). Default judgment is an extreme sanction, and decisions on the merits are favored. Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). However, default judgment is ordinarily justified when a party fails to respond after having received proper notice. Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984). After the clerk's entry of default, all of the well-pleaded allegations in a complaint pertaining to liability are deemed true. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997) (recognizing that the factual allegations in the complaint, except those relating to damages, are deemed true after default).

However, a court cannot take allegations in a complaint regarding damages as true. Credit Lyonnais Sec. (USA), Inc., v. Alcantara, 183 F.3d 151, 154–55 (2d Cir. 1999). After establishing liability, a court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. Transatlantic, 109 F.3d at 111. To determine the amount of damages in the context of a default judgment, "the court may conduct such hearings or order such references as it deems necessary and proper." Fed. R. Civ. P. 55(b)(2). However, "it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there [is] a basis for the damages

specified in the default judgment." Fustok v. ContiCommodity Serv., Inc., 873 F.2d 38, 40 (2d Cir. 1989); see also Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991) (a full evidentiary hearing was not necessary where district judge was "inundated with affidavits, evidence, and oral presentations"); Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Northeast King Construction Co., No. 06-CV-806, 2009 WL 1706586, at *1 (N.D.N.Y. June 16, 2009) (Kahn, J.) (same).

### B. Report-Recommendation

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); L.R. 72.1(c). If objections are timely filed, a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). However, if no objections are made, a district court need review the report-recommendation only for clear error. Barnes v. Prack, No. 11-CV-857, 2013 WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013); Farid v. Bouey, 554 F. Supp. 2d 301, 306–07, 306 n.2 (N.D.N.Y. 2008), abrogated on other grounds by Widomski v. State Univ. of N.Y. at Orange, 748 F.3d 471 (2d Cir. 2014). "A [district] judge . . . may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b).

## IV. DISCUSSION

### A. Default Judgment

Because there is no question that a motion for default judgment is pending before the Court, and because the parties agree that the issue of damages can be decided on the papers, Dkt. Entry for April 26, 2019; see also Obj. at 4, the Court now considers the Default Motion. As both

Plaintiff and Defendants requested, the Court considers the briefing on both the Letter Motion and Default Motion. See Default Mot. Mem. at 1 n.1; Default Mot. Resp. at 2 n.2.

Defendants raise two primary objections to the Default Motion. First, they argue that the Court should stay entry of default judgment against Ferrex while the litigation against Clarkson and 1199541 continues. Letter Mot. Resp. at 2–5. Second, if the Court grants default judgment against Ferrex, Defendants argue that the amount of damages should be significantly lower than the $578,874.82 requested by Plaintiff. Id. at 5–7. Default Mot. Resp. at 2–5.

*1. Timing*

a. Stay

Defendants argue that the court should stay the Default Motion against Ferrex because of a risk of inconsistent judgments. Letter Mot. Resp. at 2–4. This argument is unconvincing.

Defendants' argument is as follows: When there are multiple defendants who might be jointly and severally liable (as defendants who are alter egos of other defendants would be), and only one of those defendants has defaulted thus far, a court should stay the determination of damages to avoid the possibility of conflicting judgments. Applying that to the case at hand, the Court should stay the Default Motion against Ferrex to avoid the possibility that 1199541 or Clarkson is found liable for a different amount of damages. Letter Mot. Resp. at 2–4. While Defendants correctly recite the law, it is not applicable to Ferrex.

"[T]he Supreme Court long ago warned that 'absurdity might follow' in instances involving motions for default judgment[]s where a court 'can lawfully make a final decree against one defendant . . . while the cause was proceeding undetermined against the others.'" Societe d'Equipments Internationaux Nigeria, Ltd v. Dolarian Capital, Inc., No. 15-CV-1553, 2016 WL 6868023, at *2 (E.D. Cal. Nov. 21, 2016) (quoting Frow v. De La Vega, 82 U.S. 552,

6

554 (1872)). Defendants base their argument on cases that have applied Frow's holding to alter ego liability in the modern context, and argue that this Court should do the same. See Letter Mot. Resp. at 2–4 (citing, inter alia, Chiquita Fresh N. Am., LLC v. Long Island Banana Corp., No. 14-CV-982, 2018 WL 1786991 (E.D.N.Y. Feb. 28, 2018), report and recommendation adopted, 293 F. Supp. 3d 305 (E.D.N.Y. 2018); Mercury Venture Int'l Ltd. v. DGM Commodities Corp., No. 13-CV-1521, 2015 WL 893652 (E.D.N.Y. Mar. 2, 2015)).

Both Chiquita and Mercury, however, addressed situations in which the plaintiff had *direct* claims against the non-defaulting defendants. Chiquita, 2018 WL 1786991 at 1; Mercury, 2015 WL 893652, at *1. Those plaintiffs could obtain independent judgments based on the causes of action they directly brought against the non-defaulting defendants, creating the potential for inconsistent judgments. But here, Plaintiff does not directly bring any causes of action against 1199541 or Clarkson. See Am. Compl. ¶¶ 39–66 (including Clarkson and 1199541 only in Count IV's assertion of alter ego liability, not Counts I–III). Plaintiff cannot therefore obtain independent judgments against 1199541 or Clarkson—1199541 and Clarkson can only be held liable to the extent that Ferrex is liable. See Chiquita, 2018 WL 1786991, at *9 ("[A]lter ego liability is not a separate cause of action, 'rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners[,]' or on another entity.") (quoting Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc., 655 F. Supp. 2d 177, 195 (E.D.N.Y. 2009)). The question of whether Ferrex's liability can be attributed to Clarkson and 1199541 remains to be litigated, but the answer will not change the amount of damages for which Ferrex—and potentially 1199541 and Clarkson—is liable.[1]

---

[1] Defendants also attempt to analogize the present case to Societe d'Equipments' denial of default judgment where claims were still pending against another defendant because "the claims, facts, and legal issues asserted in the complaint relative to each of the two defendants are

7

In support of staying the Default Motion, Defendants also argue that Plaintiff "has incorporated into its claims against [1199541 and Clarkson] in Count Four all of the factual allegations it has asserted against Ferrex in the first three counts of its Complaint." Letter Mot. Resp. at 4; see Am. Compl. ¶ 57. But as is clear in the Amended Complaint, and as Plaintiff states in its Letter Motion Reply:

> [T]he liability of the Clarkson Defendants is not premised on whether they breached their warranty obligations to Micro Fines. They were not parties to the contract or the warranty with Micro Fines. Their potential liability instead arises out the facts and circumstances a[n]d equities that would justify disregarding the corporate entity and making them liable for Ferrex's established breach of warranty. Thus, the only "merits" remaining for the Clarkson Defendants to defend are whether they can be reached under a veil-piercing theory to satisfy a judgment against Ferrex.

Letter Motion Reply at 4; see generally Am. Compl. Further, Plaintiff is merely incorporating the previous factual allegations and claims against Ferrex into the Count IV alter ego section against 1199541 and Clarkson; Plaintiff is not directly asserting breach of warranty claims against 1199541 and Clarkson. See 5A Arthur R. Miller, Mary Kay Kane, and A. Benjamin Spencer, Federal Practice and Procedure § 1326 (2019) ("When the pleader asserts several claims for relief or defenses that rest on a common factual pattern, incorporation by reference eliminates any unnecessary repetition of the transactions and events upon which the pleader relies.").

---

obviously quite similar." Societe d'Equipments Internationaux Nigeria, Ltd v. Dolarian Capital, Inc., No. 15-CV-1553, 2016 WL 6868023, at *3 (E.D. Cal. Nov. 21, 2016). This falls flat for the same reason that Defendants' reliance on Chiquita and Mercury was misguided—the plaintiff in Societe d'Equipments alleged that *both* defendants had directly wronged it; not that one was merely the alter ego of the other. Societe d'Equipments, 2016 WL 6868023, at *3 ("[P]laintiff specifically alleges that: Defendants knowingly and willfully conspired and agreed among themselves to commit the wrongful acts alleged herein. Defendants and each of them did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy and agreement to commit the wrongful acts alleged herein. Each defendant further ratified the acts of the other.").

Thus, the Court declines to stay the Default Motion. "The plaintiff in this case has suffered a significant monetary injury. Postponing the inquest would delay—and perhaps jeopardize—its recovery since a plaintiff cannot begin to collect on a judgment until it is final." Int'l Gemmological Inst., Inc. v. Rafaeil, No. 05-CV-2395, 2005 WL 3880222, at *3 (S.D.N.Y. Aug. 17, 2005), report and recommendation adopted, No. 05-CV-2395, 2006 WL 739822 (S.D.N.Y. Mar. 21, 2006).[2]

### b. Liability

On the issue of liability, the Court finds that Plaintiff has met its "modest threshold burden of establishing entitlement to default judgment." Bricklayers & Allied Craftworkers Local 2 v. Ne. Specialty Sys., Inc., No. 16-CV-610, 2017 WL 3731925, at *3 (N.D.N.Y. Aug. 30, 2017).

Accepting Plaintiff's allegations as true, Transatlantic, 109 F.3d at 108, the Court finds that Plaintiff has established Ferrex's liability based on the breach of express warranty claim. "To prevail on a claim of breach of express warranty, a plaintiff must show an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon." Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC, 382 F. App'x 110, 111–12 (2d Cir. 2010) (internal quotation marks omitted). Here, Plaintiff has alleged that Ferrex provided a fifteen-month express warranty that its equipment "would be free from defects in workmanship and material under normal use and proper operating conditions for the purpose for which it [was] manufactured and sold," that the dryer began

---

[2] The Court notes that Ferrex included in its Letter Motion Response a request that the Court grant it permission to file a motion to re-open the entry of default. Letter Mot. Resp. at 5. As this was not filed as a formal motion or letter request, the Court does not consider this request.

9

malfunctioning well before the fifteen-month period had lapsed, and that Ferrex refused to honor the warranty. Am. Compl. ¶ 13–34.

Likewise, Plaintiff successfully alleged breach of implied warranty. To succeed on an implied warranty claim, a plaintiff "must show both the existence and breach of the warranty and that the breach was the proximate cause of plaintiff's damages." Bellevue S. Associates v. HRH Const. Corp., 579 N.E.2d 195, 203 (N.Y. 1991). "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. § 2-314(1). Here, Plaintiff has alleged that Ferrex was a merchant, that the dryer was not fit for its ordinary purpose, and that Ferrex's failure to provide a working dryer and provide or pay for the necessary repairs caused Plaintiff's damages. Am. Compl. ¶¶ 18–34, 40, 54–56.

Finally, Plaintiff has stated a claim for revocation in Count I.[3] As Plaintiff alleges, Micro Fines and Ferrex are both merchants under NY UCC § 2-104, the dryer and related equipment are "goods" under NY UCC § 2-105, and Plaintiff revoked its acceptance of the dryer under NY UCC § 2-608. Am. Compl. ¶¶ 33–34, 40–45. Further, as required to revoke goods under § 2-608, Plaintiff sufficiently alleged that the "non-conformity substantially impair[ed] the value of the goods." See Official Comment to N.Y. UCC Law § 2-608; Am. Compl. ¶¶ 23 – 27, 42.

Thus, Plaintiff has established that it is entitled to default judgment on the issue of Ferrex's liability.

---

[3] The Court notes that this count is labeled "Recission" [sic]. However, the allegations under Count I clearly pertain to revocation, and even cite to the New York UCC section on revocation. See Am. Compl. at 39–46 (citing NY UCC § 2-608); see also Knox v. City of Royal Oak, No. 06-CV-10428, 2006 WL 3825069, at *5 (E.D. Mich. Dec. 26, 2006) (finding that a plaintiff had stated a claim for emotional distress even though "she used the wrong title for her cause of action").

*2. Damages*

Plaintiff seeks a total of $578,874.39 in damages, broken down into the following types:

- Original purchase price: $435,500
- Freight costs paid to Ferrex: $24,715
- Installation fees for Ferrex's dryer paid to other contractors: $65,128.51
- Repair costs for Ferrex's dryer paid to other contractors: $17,952.36
- Cost of decommissioning and disposing of Ferrex's dryer: $35,578.52

Dkt. No. 41 ("Rita Piela Affidavit") at 1. Defendants argue that Plaintiff is not entitled to any of the types of damages other than the original purchase price, and that even if Plaintiff is entitled to all types of damages, it has not provided adequate documentation of the specific dollar amounts alleged. See Letter Mot. Resp.; Default Mot. Resp.

1. Types of Damages

The parties' arguments about the types of damages to which Plaintiff is entitled meander over the two sets of briefs. In short, Defendants first argue that Plaintiff is not entitled to any damages other than the $435,500 purchase price because Plaintiff did not request the other damages in its Amended Complaint and thus did not put Ferrex on notice that it was seeking these additional damages. Letter Mot. Resp. at 6. Plaintiff counters that the Amended Complaint did in fact put Ferrex on notice that it was seeking the additional damages, and that Plaintiff did not specify the dollar amount of the additional damages in the Amended Complaint because those damages were still accruing. Letter Mot. Reply at 11. Defendants then respond that most of the extra damages—freight, installation, and repair work—had already accrued, and that Plaintiff's argument that such damages were still accruing is disingenuous. Default Mot. Resp. at 3. Finally, Plaintiff rejoins that while it is true the costs of shipping, freight, and repairs had

already been incurred, Plaintiff was not yet aware how much it would cost to install the new dryer it was forced to buy to from a different company. Default Request Reply at 2–3. Because, Plaintiff explains, under the principle of mitigation, Plaintiff may have been obligated to seek the lesser of the two amounts (i.e. the total costs related to the old dryer versus the total costs related to the new dryer), Plaintiff needed to wait until the it had purchased and installed the new dryer so that it could seek the appropriate amount. Id. After considering these arguments, the Court finds that Plaintiff is entitled to seek all types of damages it requests.

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54. As the Second Circuit has noted, "It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award." Silge v. Merz, 510 F.3d 157, 159 (2d Cir. 2007) (quoting 10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure, § 2663 (1998)). However, "[a]lthough Rule 54(c) limits the damages recoverable by a plaintiff following a default judgment to the type and quantity of damages demanded in the complaint, it does not require plaintiff to have demanded a sum certain in order to recover on default." Ames v. STAT Fire Suppression, Inc., 227 F.R.D. 361, 362 (E.D.N.Y. 2005).

Instructive on this point is Glassman-Brown, in which another court in this circuit granted a default judgment that included damages for pain and suffering, even though the complaint did not explicitly request an amount of damages for pain and suffering—or even request damages for pain and suffering at all:

> In this case, damages for pain and suffering were neither pleaded explicitly in the complaint nor in the prayer for relief[.] Furthermore,

> the complaint did not specify the amount of damages sought. However, the complaint's prayer for relief refers to an award to the plaintiffs: for "actual, compensatory and statutory damages." Based on the language used in the complaint, the Court finds that the plaintif[f]s have complied satisfactorily with Rule 54(c)'s notice requirement concerning the scope of damages—notwithstanding their failure to mention damages for pain and suffering explicitly in the complaint—given the reference in the prayer for relief to actual and compensatory damages the plaintiffs have sustained

Glassman-Brown v. Pouring Wine, LLC, No. 14-CV-3763, 2015 WL 5853802, at *3 (S.D.N.Y. Aug. 5, 2015), report and recommendation adopted in relevant part, No. 14-CV-3763, 2015 WL 5853807 (S.D.N.Y. Oct. 7, 2015) (internal quotation marks omitted); see also Braccia v. D'Blass Corp., No. 08-CV-8927, 2011 WL 2848146, at *6 (S.D.N.Y. June 13, 2011), report and recommendation adopted, No. 08-CV-8927, 2011 WL 2848202 (S.D.N.Y. July 18, 2011) ("Although the complaint did not specify the amount of damages requested, Rule 54(c) notice is satisfied because actual damages were explicitly requested in the complaint and [plaintiff] seeks actual damages in connection with the defendant's default. Provided [plaintiff] establishes damages by sufficient, competent evidence, his failure to indicate the amount of damages sought in the *ad damnum* clause of his complaint does not bar an award of damages.").

Defendants are correct that they were entitled to some indication of the amount of damages sought so they could make an informed decision whether it was worthwhile to defend the suit. But like the plaintiffs in Glassman-Brown and Braccia, Plaintiff provided the requisite notice. The Amended Complaint states that Plaintiff is "entitled to the return of the purchase price, removal of the goods at Ferrex's expense, as well as Micro Fines' cost to cover" and "costs associated with the purchase." Am. Compl. ¶¶ 46, 52, 56. This indisputably put Ferrex on notice that Plaintiff was requesting not only the purchase price and removal, but also costs associated with the purchase, such as freight, installation, and repairs. Thus, when Ferrex's

13

counsel stated in an email to Plaintiff that Ferrex is "not defending the lawsuit," Dkt. No. 34-1 ("Email from Ferrex's Counsel") at 1; see also id. at 2, it was done with ample notice about the damages Plaintiff was seeking.

This case more closely parallels Glassman and Ames than the case Defendants rely on, Silge v. Merz. In Silge, the Court refused to grant pre-judgment interest in a default motion because the plaintiff "could easily have drafted a complaint that included a distinct claim for 'pre-judgment interest' in the demand clause. By operation of Rule 54(c), his failure to do so, intentional or not, ran the risk that his damages would be limited in the event of default." Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007). Unlike in Silge, Plaintiff included in the Amended Complaint the types of damages sought. See Am. Compl. ¶¶ 46, 52, 56.

As to the parties' dispute about whether these additional damages were still accruing at the time the Complaint was filed, the Court agrees with Plaintiff that because it "was bound to apply the principle of mitigation, [Plaintiff] was not able to calculate its actual damages for the replacement goods until after it had purchased and installed the replacement unit." Default Mot. Reply at 2. Once Plaintiff knew the costs of shipping and installing a new dryer exceeded the costs related to the Ferrex dryer, it sought the lesser expense. Id. Defendants claim that Plaintiff "obfuscated the facts" when it explained in its Letter Motion Reply that it did not specify the damages for freight, installation, and repairs because those damages were still accruing. See Default Mot. Resp. at 3. But while Plaintiff could have more clearly explained why these costs were not yet determined, this lack of clarity in no way retroactively jeopardized Ferrex's ability to make an informed decision when it defaulted over a year prior. Thus, Plaintiff may seek

damages for the purchase price, as well as freight, installation, repairs,[4] and removal/decommissioning.

## 2. Documentation of Damages

While Plaintiffs are correct that they are entitled to all types of requested damages, the Court must evaluate Plaintiff's documentation of the specific amounts claimed. Robertson v. Doe, No. 05-CV-7046, 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008) ("[E]ven upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought."). The Court finds that Plaintiffs have adequately documented most, but not all, of the requested damages.

Plaintiff has adequately documented the $435,500 Plaintiff paid to Ferrex for the dryer. Ex. B to Dkt. 41 at 2 (purchase order); see also id. at 3, 5–6 (invoices totaling $435,500). Likewise, Plaintiff has documented the $24,715 in freight costs paid to Ferrex. Id. at 4 (invoice for $24,715).

Plaintiff has also provided sufficient documentation of the 17,952.36 it paid for repairs to other contractors. See id. at 9 ($7,503 in repairs by Matco); 10 ($87.09 fin repairs by Master-Carr); 11 ($575 in repairs by Tioga Tool); 13–14 ($1,786.40 in repairs by Larry Rossow); 15 ($131.36 in repairs by Allied Electronics); 17–19 ($5657.49 in repairs by Paul Lehr); 25 ($323.01 in repairs by Home Central); and 28–33 ($1,889.01 in repairs by Weitsman).

---

[4] The Court acknowledges that unlike the freight and installation costs related to Ferrex's dryer, the repair costs were not going to be duplicated when the new dryer was installed, and thus were determinable at an earlier date. However, when deciding whether to seek costs associated with the Ferrex dryer or the cost to cover, Plaintiff still needed to wait for the new freight and installation costs so it could compare the total associated costs (freight, installation, and repairs of the Ferrex dryer) with the total costs to cover (freight and installation of the new dryer).

Plaintiff has also substantiated the $35,578.52 in expenses it incurred decommissioning and disposing of Ferrex's dryer. See id. at 20 ($1,309.81 paid to Paul Lehr); 26 ($35.77 paid to Home Central); 34 ($33,840.08 paid to National Maintenance); 35 ($342.72 paid to Express); 36 ($50.14 paid to JC Smith).

However, Plaintiff has not sufficiently documented all its alleged expenses related to the $65,128.51 it paid to other contractors for the installation of Ferrex's dryer. While Plaintiff accounts for the $25,128.51 paid to Matco, see id. at 8, Plaintiff has not provided documentation to substantiate the $40,000 it allegedly paid to US Conveyor. See Ex. A. to Dkt. 41 at 1 (spreadsheet listing a $40,000 payment from Plaintiff to US Conveyor, but not providing any documentation). Plaintiff did provide a sales order from US Conveyor for $1,700,000, which includes a $40,625 charge for "dryer." Dkt. No. 42 at 1. However, without any explanation for the discrepancy between the $40,000 listed on the spreadsheet and the $40,625 on the sales order, the Court cannot assume that the sales order supports Plaintiff's damages claim. See E-Centurion, Inc. v. Long Beach Co., No. 06-CV-5913, 2012 WL 3597583, at *2 (E.D.N.Y. July 12, 2012) (requiring that a plaintiff provide "originals of the invoices/purchase orders involved in this case, or an explanation as to why they are not available" before granting damages requested in default motion) report and recommendation adopted, No. 06-CV-5913, 2012 WL 3597025 (E.D.N.Y. Aug. 20, 2012).

Accordingly, the Court grants Plaintiff's request for damages in the amount of $538,874.39 and denies Plaintiff's request for damages in the amount of $40,000.

### C. Report-Recommendation

Because Plaintiff's Default Motion is granted in relevant part, the Court denies Plaintiff's Objection to the Report-Recommendation as moot. Thus, the Court reviews the Report-Recommendation for clear error, Barnes, 2013 WL 1121353, at *1, and finds none.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Default Motion (Dkt. No. 57) is **GRANTED** against Ferrex as to liability and damages in the amount of $538,874.39 and otherwise **DENIED**; and it is further

**ORDERED**, that to the extent Plaintiff seeks an additional $40,000 in installation damages, Plaintiff may file, within **thirty days** of the date of this Memorandum-Decision and Order, a motion to amend this judgment that includes adequate documentation of the alleged damages; and it is further

**ORDERED**, that the Report-Recommendation (Dkt. No. 53) is **APPROVED AND ADOPTED** in its entirety; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

DATED: February 24, 2020
Albany, New York

Lawrence E. Kahn
Senior U.S. District Judge