UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

MICRO FINES RECYCLING OWEGA
LLC,

                                    Plaintiff,

            -against-                                          3:17-CV-1315 (LEK)

FERREX ENGINEERING, LTD.,

                                    Defendant.

_____

<u>**MEMORANDUM-DECISION AND ORDER**</u>

## I.      INTRODUCTION

Plaintiff Micro Fines Recycling Owego LLC initially brought this action against Ferrex

Engineering, Ltd ("Ferrex") alleging breach of contract. Dkt. No. 1 ("Complaint"). Plaintiff later

filed an amended complaint adding 1199541 Ontario, Inc. ("1199541") and Tom Clarkson

("Clarkson") as defendants and seeking to pierce the corporate veil. Dkt. No. 13 ("Amended

Complaint"). Ferrex did not defend and Plaintiff was granted Default Judgment as to Ferrex. Dkt.

No. 82. Ferrex filed for bankruptcy and all proceedings against Ferrex were stayed. Dkt. No. 101.

Presently before the Court are cross motions for summary judgment. Dkt. Nos. 116

("Defendants' Motion"), 116-1 ("Defendant's Memorandum of Law"), 116-2 ("Defendant's

Statement of Material Facts"), 127 ("Plaintiff's Response"), 129 ("Plaintiff's Amended Response

to Defendant's Statement of Material Facts"), 130 ("Defendants' Reply"), 118 ("Plaintiff's

Motion"), 119-2 ("Plaintiff's Memorandum of Law"), 121 ("Plaintiff's Statement of Material

Facts"), 127 ("Defendants' Response"), 123 ("Defendants' Response to Plaintiff's Statement of

Material Facts"), 131 ("Plaintiff's Reply"). For the following reasons, the Court grants

Defendant's Motion and denies Plaintiff's Motion. Also before the court is Defendants' motion to strike, Dkt. Nos. 136 ("Motion to Strike"). The Court denies this motion as moot.

## II.    BACKGROUND

### A.  Factual History

The following facts are undisputed, except where otherwise noted.

Ferrex Engineering Ltd. is a corporation incorporated in Ontario, Canada. Def.'s SMF ¶ 1; Pl.'s Am. Resp. to Def.'s SMF ¶ 1. At the beginning of 1997, Clarkson was President of Ferrex and owned 50% of the company's shares. See Def.'s SMF ¶¶ 7, 8, 13; Pl.'s Am. Resp. to Def.'s SMF ¶¶ 7, 8, 13. In February 1997, Clarkson incorporated 1199541 and transferred his 50% interest in Ferrex into 1199541. Def.'s SMF ¶¶ 16, 17; Pl.'s Am. Resp. to Def.'s SMF ¶¶ 16, 17. Clarkson created 1199541 for investment and tax planning purposes. Def.'s SMF ¶ 19; Pl.'s Am. Resp. to Def.'s SMF ¶ 19. "This is a common corporate structure in Canada and is used extensively for this purpose." Def.'s SMF ¶ 21; Pl.'s Am. Resp. to Def.'s SMF ¶ 21.

At various times between 1997 and November 2011, Ferrex declared dividends payable to shareholders including 1199541. Def.'s SMF ¶ 22; Pl.'s Am. Resp. to Def.'s SMF ¶ 22. Ferrex used 1199541 like a bank, paying dividends to 1199541 and withdrawing them in the form of loans. See Pl.'s SMF ¶ 7; Def.'s Resp. to Pl.'s SMF ¶ 7.[1] In some cases, dividends were paid to 1199541 and later loaned back to Ferrex, while in other cases the dividends were simply retained by Ferrex and characterized as loans. See Def.'s SMF ¶¶ 22–26; Pl.'s Am. Resp. to Def.'s SMF ¶¶ 22–26.

---

[1]  The parties disagree about exactly how to construe the deposition testimony that 1199641 "was used like a bank," Dkt. No 121-1 at 8, but the court does not regard this as a dispute of material fact.

By November 2011, 1199541 had become Ferrex's sole shareholder after Ferrex's other 50% shareholder left the company. Def.'s SMF ¶ 28; Pl.'s Am. Resp. to Def.'s SMF ¶ 28. Around that time, Clarkson was considering selling his interest in Ferrex (as held through 1199541) to his son over a period of time. Def.'s SMF ¶ 29; Pl.'s Am. Resp. to Def.'s SMF ¶ 29. He was advised by an accountant that, because 1199541 would no longer own 100% of Ferrex, 1199541 should securitize the intercompany loan balance between Ferrex and 1199541. Def.'s SMF ¶ 30; Pl.'s Am. Resp. to Def.'s SMF ¶ 30. A General Security Agreement was executed, under which Ferrex pledged all of its assets as security for the intercompany loan balance as well as for any future loans from 1199541 to Ferrex. Def.'s SMF ¶ 31; Pl.'s Am. Resp. to Def.'s SMF ¶ 31. Ferrex issued a promissory note to 1199541 in the amount of $444,711.00. Def.'s SMF ¶ 33; Pl.'s Am. Resp. to Def.'s SMF ¶ 33. This amount derived from a calculation performed by accountants and not from an actual transfer of cash occurring in 2011. See Pl.'s SMF ¶ 11; Def.'s Resp. to Pl.'s SMF ¶ 11; Dkt. No. 121-1 at 7. Also in November 2011, 1199541 sold a 50% interest in Ferrex to 1757084 Ontario Inc. ("1757084"), a holding company owned by Mark Clarkson. Def.'s SMF ¶ 34; Pl.'s Am. Resp. to Def.'s SMF ¶ 34.

Ferrex declared dividends in 2011, 2013, and 2014, but in 2014 began to experience financial strain and never again declared dividends or made payments to 1199541. See Def.'s SMF ¶¶ 37–40; Pl.'s Am. Resp. to Def.'s SMF ¶¶ 37–40. Between June 2017 and August 2019, 1199541 made numerous loans to Ferrex. Def.'s SMF ¶ 47; Pl.'s Am. Resp. to Def.'s SMF ¶ 47. By August 2019, 1199541 had made loans to Ferrex totaling $1.757 million, some of these in the form of Ferrex's retention of dividends. Def.'s SMF ¶ 50; Pl.'s Am. Resp. to Def.'s SMF ¶ 50. The loan terms allowed 1199541 to demand repayment at any time, but did not include other

3

repayment terms. See Pl.'s SMF ¶ 10; Def.'s Resp. to Pl.'s SMF ¶ 10; Clarkson also made a

personal loan of $40,000 to Ferrex in 2018. Def.'s SMF ¶ 52; Pl.'s Am. Resp. to Def.'s SMF ¶

52. Ferrex repaid the loan from Clarkson but none of the loans from 1199541. Def.'s SMF ¶¶

51– 52; Pl.'s Am. Resp. to Def.'s SMF ¶¶ 51–52.

In or around May 2016, SGM Magnetics Corporation, the parent company of Plaintiff,

ordered an industrial dryer from Ferrex. Def.'s SMF ¶ 53; Pl.'s Am. Resp. to Def.'s SMF ¶ 53.

Ferrex delivered the dryer to Plaintiff in or around September 2016. Def.'s SMF ¶ 54; Pl.'s Am.

Resp. to Def.'s SMF ¶ 54. Ferrex provided a warranty which stating that Ferrex would repair or

replace any parts that proved to be defective. Def.'s SMF ¶ 55; Pl.'s Am. Resp. to Def.'s SMF ¶

53. Plaintiff experienced a number of problems with the dryer and ultimately rejected it,

demanding that Ferrex remove the dryer and refund the purchase price. Def.'s SMF ¶¶ 59–63;

Pl.'s Am. Resp. to Def.'s SMF ¶¶ 59–63. Ferrex did not remove the dryer or provide a refund and

Plaintiff commenced this action. See Def.'s SMF ¶ 64; Pl.'s Am. Resp. to Def.'s SMF ¶ 64.

In its briefs, Plaintiff also relies on accusations that "on a December 21, 2017 call,

Ferrex's counsel claimed if that (sic) Micro Fines obtained a judgment, Clarkson would call

1199541's note, close Ferrex, and re-open under a new name the next day." Pl.'s Memo. of Law

at 5. However, Plaintiff has not included any relevant facts in its statement of material facts. See

generally Pl.'s SMF. As such, Defendants contend that the Court should disregard these

allegations. Def.'s Resp. to Pl.'s Mot. for Summary Judgment at 2. Because it does affect the

Court's ultimate determination, the Court assumes these facts remain in dispute.

### B. Procedural History

Plaintiff commenced this action on December 4, 2017. Compl. Plaintiff's original Complaint listed Ferrex as the sole defendant. Ferrex failed to respond to Plaintiff's Complaint and on March 21, 2018, the Court directed Plaintiff to file an application for clerk's entry of default as to Ferrex. Dkt. No. 12. Before requesting an entry of default, Plaintiff filed an Amended Complaint adding 1199541 and Clarkson as defendants and seeking to pierce the corporate veil to hold both liable for claims against Ferrex. Am. Compl. at 1, 8–9. Default Judgement was entered against Ferrex on February 24, 2020, and the Court awarded $538,874.39 in liability and damages to Plaintiff. Dkt. No. 83. On March 10, 2020, Plaintiff moved to enforce the judgement, Dkt. No. 88; on March 20, 2020, Defendant moved for sanctions, Dkt. No. 89; and on March 25, 2020 Plaintiff moved to alter judgement. Dkt. No. 91. These motions were briefed. However, on April 22, 2020, Ferrex notified the Court that it had filed for Chapter 15 Bankruptcy protection and all proceedings against Ferrex were stayed. Dkt. No. 101. On October 5, 2020, discovery was completed, see Dkt. No. 113, and the following day Plaintiffs and Defendants moved for summary judgement. Dkt. Nos. 116–119. Responses to both motions were filed on December 1, 2020, Dkt. Nos. 122, 127, and replies to those responses were filed on December 7, 2020, Dkt. Nos. 130, 131. Finally, on December 18, 2020, Defendant filed a motion to strike portions of Plaintiff's Reply and accompanying affidavits. Dkt. No. 136.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56 instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under

the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

IV.     **CHOICE OF LAW**

Defendant contends that this dispute should be governed by the law of Ontario Canada. Def.'s Memo. of Law at 3. Plaintiff disagrees, arguing that Defendant waived the choice of law by arguing their motion to dismiss under the law of New York. Pl.'s Resp. to Def.'s Mot. for Summary Judgement at 5–6. However, the Court need not address the question of waiver because "where there is no material difference between the law of New York and the law of another potential forum, reference to New York law is proper." Elgin Sweeper Co. v. Melson Inc., 884 F. Supp. 641, 648 (N.D.N.Y. 1995) ("The court can find no material difference in the application of the law of Ontario vis-à-vis the law of New York with respect to the claims alleged . . . . The court will therefore apply New York law as the "choice of law" in the instant case . . . ."). Here, the parties have acknowledged that the relevant law of New York and Ontario are substantially similar on the question of piercing the corporate veil. See Pl.'s Resp. ("Ontario provincial case law . . . applies essentially the same test as New York law"); Def.'s Reply ("[T]he standard for imposing liability under an alter ego theory is similar in each jurisdiction [though] each jurisdiction employs its own test"). The Court agrees. See Giarla v. Coca-Cola Co., No. 17-CV-359S, 2021 WL 1110397, at *5 (W.D.N.Y. Mar. 23, 2021); Key Items, Inc. v. Ultima Diamonds, Inc., No. 09-CV-3729, 2011 WL 4526148, at *6 (S.D.N.Y. Sept. 29, 2011) ("[T]he applicable legal standard for piercing the corporate veil is substantially the same in New York as it is in Ontario . . . ."), vacated on other grounds 514 F. App'x 40 (2d Cir. 2013).

Despite acknowledging the substantial similarity between New York and Ontario law, Plaintiff argues that, unlike under Ontario Law, "New York law allows the corporate veil to [be] pierced *either* when there is fraud, or when the corporation has been used as an alter-ego." Pl.'s

Memo. of Law at 12 (quoting Itel Containers v. Atlanttrafik Express Serv. Ltd., 909 F.2d 698,

703 (2d Cir. 1990)). This, however, is an outdated statement of New York law. Today, New

York courts require "(1) the owners exercised complete domination of the corporation in respect

to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong

against the plaintiff which resulted in plaintiff's injury." EED Holdings v. Palmer Johnson

Acquisition Corp., 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (emphasis added) (quoting Matter of

Morris v. New York State Dep't of Taxation and Fin., 623 N.E.2d 1157, 1160–61 (1993) and

noting that "[t]he New York Court of Appeals has held that both of these elements must be

established in order to justify application of the veil-piercing doctrine").

　　　Having concluded that New York and Ontario law are substantially similar, the Court will

apply the law of New York.

**V.    DISCUSSION**

　　　Under New York Law, in order to pierce the corporate veil a Plaintiff must show that:

"(1) the owners exercised complete domination of the corporation in respect to the transaction

attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff

which resulted in plaintiff's injury." Id. at 512. While the determination of "complete

domination" is always fact dependant, courts have outlined ten factors that may be relevant to

such a finding. These include:

> (1) the absence of the formalities and paraphernalia that are part and
> parcel of the corporate existence, i.e., issuance of stock, election of
> directors, keeping of corporate records and the like, (2) inadequate
> capitalization, (3) whether funds are put in and taken out of the
> corporation for personal rather than corporate purposes, (4) overlap
> in ownership, officers, directors, and personnel, (5) common office
> space, address and telephone numbers of corporate entities, (6) the

amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc., 933 F.2d 131, 139 (2d Cir. 1991).

Similarly, there is no precise definition of the type of wrong necessary to justify piercing the

corporate veil. However, courts have made clear that "a simple breach of contract, without more,

does not constitute a fraud or wrong warranting the piercing of the corporate veil." Am.

Federated Title Corp. v. GFI Mgmt. Servs., Inc., 716 F. App'x 23, 28 (2d Cir. 2017) (quoting

Bonacasa Realty Co., LLC v. Salvatore, N.Y.S.2d 84 (App. Div. 2d Dep't 2013)). And while a

defendant's intent to commit a wrong may not always be dispositive, "analysis of defendants'

intent [offers] one method of assessing whether the corporate form was sufficiently abused to

permit veil piercing." Id.

Here, in assessing whether the corporate veil may be pierced, it is important to identify

the "transaction attacked." There are several possibilities to consider. In chronological order, the

relevant transactions include (1) the formation of 1199541, (2) the creation of a security interest

in all of Ferrex's assets, (3) the operation of Ferrex at or near insolvency, (4) the creation of a

contract with Plaintiff, (5) the breach of that contract, (6) the alleged threat to call the loans and

security interest, and (7) the taking of Ferrex into bankruptcy proceedings and use of the security

interest to avoid paying the judgement to Plaintiff. The Court considers each of these transactions

in turn.

### A. Formation of 1199541

With regard to the creation of 1199541, Plaintiff admits that it was not created with intent to make Ferrex judgement proof, but rather was "incorporated for investment and tax planning purposes." Pl.'s Am. Resp. to Def.'s SMF ¶ 19. Furthermore, this structure is commonly used in Canada for this purpose." Def.'s SMF ¶ 21; Pl.'s Am. Resp. to Def.'s SMF ¶ 21. As such, there is nothing to suggest that the mere creation of 1199541 constitutes a wrong sufficient to pierce the corporate veil.

### B. Creation of the Security Interest

1199541's security interest in Ferrex's assets was created in 2011 at the time 1199541 sold half of its shares to Mark Clarkson's holding company. Def.'s SMF ¶¶ 29–31; Pl.'s Am. Resp. to Def.'s SMF ¶¶ 29–31. Although "the primary purpose of a security interest is to have the collateral available if the debtor becomes bankrupt," Fed. Nat. Mortg. Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'ship, 153 B.R. 204, 211 (N.D. Ill. 1993), Ferrex remained profitable at that time and there is no evidence to suggest that the interest was created in order to render Ferrex judgement proof. Indeed, it was not until 2014 that Ferrex began to experience financial difficulties. Def.'s SMF ¶ 38; Pl.'s Am. Resp. to Def.'s SMF ¶ 38. Thus, the creation of the security interest was not a wrong sufficient to justify piercing the corporate veil.

### C. Operation of Ferrex Near Insolvency

Plaintiff argues that by operating Ferrex near the point of insolvency, Clarkson and 1199541 ensured that Ferrex would be judgement proof and unable to pay out warrantee claims such as Plaintiff's. See Pl.'s Reply at 12. If Clarkson and 1199541 had removed assets from Ferrex to render it judgement proof, this would be a compelling argument. Am. Federated Title

10

Corp. v. GFI Mgmt. Servs., Inc., 126 F. Supp. 3d 388, 404 (S.D.N.Y. 2015), aff'd, 716 F. App'x
23 (2d Cir. 2017), ("It is clear that proof of a stripping of the assets of the subsidiary by the
parent, motivated by a desire to render the subsidiary judgment proof, would constitute a 'fraud
or wrong' justifying piercing of the corporate veil." (quoting Matter of Arbitration between
Holborn Oil Trading Ltd. & Interpetrol Bermuda Ltd., 774 F. Supp. 840, 847 (S.D.N.Y.1991))).
Indeed, as Plaintiff points out, stripping of assets is a commonly recognized justification for
piercing the corporate veil. Pl.'s Memo of Law at 14 (citing Am. Federated Title Corp, 126 F.
Supp. 3d at 404). Here, however, 1199541 has done the opposite. It has repeatedly lent money to
Ferrex to keep Ferrex afloat. As such, Plaintiff's argument boils down to the contention that
1199541 should have lent Ferrex even more money, so as to prevent Ferrex from operating with
limited assets. However, 1199541 was under no obligation to make any loans to Ferrex, and the
fact that it lent Ferrex only enough to stay afloat prior to the default judgement in this case does
not constitute a wrong against Plaintiff.

   **D.  Creation of Contract with Plaintiff**

   Plaintiff contends that Ferrex entered into the contract with Plaintiff with the knowledge
that it could not fulfill its warrantee obligations. Pl.'s Memo. of Law at 12. However, even if
such action constituted a wrong against Plaintiff, it does not justify piercing the corporate veil
because Clarkson and 1199541 did not exercise complete control with regard to this transaction.
The Court finds it unnecessary to apply the ten Passalacqua factors because Plaintiff admits that
at the time of its purchase from Ferrex, Clarkson was "not active in the company" nor "involved
in the transaction because he had backed away from the company to help his wife through cancer
treatment." This fact alone would make it impossible for a reasonable jury to find that Clarkson

11

and 1199541 exercised complete domination of the corporation in respect to this transaction. See Doe v. Bloomberg, L.P., 167 N.E.3d 454, 457 (N.Y. 2019) (noting that "some participation in the specific conduct committed against the plaintiff is required" for a corporate officer or owner to be held liable for the obligations of the corporation).

### E.  Breach of Contract with Plaintiff

As noted above, breach of contract is insufficient to support piercing the corporate veil as a matter of law. Am. Federated Title Corp., 716 F. App'x at 28. Thus, mere breach of the contract between Ferrex and Plaintiff does not justify piercing the corporate veil.

### F.  Threat to Call Loans and Use of Bankruptcy to Avoid Paying Judgement

Plaintiff alleges that Defendants' attorney threatened to call the loans and use 1199541's security interest to render Ferrex judgement proof. Pl.'s Memo. of Law at 5. Plaintiff further alleges that Defendants ultimately carried through on this threat by choosing to allow default judgment against Ferrex, filing for bankruptcy, and leveraging 1199541's security interest to sell all of Ferrex's assets to a new company owned by Mark Clarkson. See id. at 6. Ultimately, while the Court finds that Defendants' actions may have constituted a wrong against Plaintiff, this wrong was not the cause of Plaintiff's injury.

To see why this is the case, an analogy is drawn to Liberty Mutual Insurance Co. v. Leroy Holding Co., 226 B.R. 746 (N.D.N.Y. 1998). In Liberty Mutual, defendant Leroy Holding Company exercised complete control over Fort Ann Express, Inc. Id. at 750. Leroy Holding used this complete control to withhold payment by Fort Ann of a judgment owed to Liberty Mutual. Id. at 753. While the court found this action to constitute a wrong, it found that the wrong did not injure Liberty Mutual because "at all times Leroy Holding held a superior claim to all funds

available to Fort Ann by virtue of [a] secured interest." Id. at 754. This was the case because Leroy Holding had perfected its security interest prior to gaining complete control over Fort Ann. Id.

Similar reasoning applies here. As discussed above, 1199541's security interest was created long before Ferrex entered into a contract with Plaintiff and long before Ferrex began to struggle financially. The timing of the security interests's creation suggests it was intended to secure 1199541's interest against Mark Clarkson's holding company, and nothing in the record suggests it was created to render Ferrex judgement proof. Thus, even if 1199541 and Clarkson exercised complete control over Ferrex in creating the security interest, as evidenced by a lack of corporate formalities, that did not render the interest invalid or its creation a wrong against Plaintiff.[2] As in Liberty Mutual then, 1199541 always held a superior claim to all funds available to Ferrex by virtue of its secured interest. This valid security interest, and not Defendants' later conduct, was the cause of Plaintiff's injury. As such, even if the later actions of 1199541 and Clarkson amounted to a wrong, that wrong was not the cause of Plaintiff's injury.

## VI.     MOTION TO STRIKE

Defendants move to strike portions of Plaintiff's Reply filed in support of Plaintiff's Motion for Summary Judgement. See generally Mot. to Strike. Because the Court denies Plaintiff's Motion for Summary Judgement, Defendant's Motion to Strike is denied as moot. See

---

[2] The Court notes that under different circumstances, the creation and enforcement of a security interest might well amount to a wrong that causes injury sufficient to pierce the corporate veil. For instance, if the security interest was created shortly before filing for bankruptcy, or with evidence of intent to render the corporation judgement proof, it might rightly be regarded as akin to stripping assets from a corporation to render it judgement proof, a commonly accepted justification for piercing the corporate veil. See, e.g., Am. Federated Title Corp., 126 F. Supp. 3d at 404.

Defendants <u>Wagner v. Metro. Life Ins. Co.</u>, No. 08-CV-11284, 2011 WL 2623390, at *3 (S.D.N.Y. July 1, 2011).

**VII.   CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendant Clarkson and 1199541's motion for summary judgment (Dkt. No. 116) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's motion for summary judgment (Dkt. No. 118) is **DENIED**; and it is further

**ORDERED**, that Defendants' motion to strike (Dkt. No. 136) is **DENIED** as moot; and it is further

**ORDERED,** that the Clerk shall **TERMINATE** from the docket Defendants Clarkson and 1199541; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      February 9, 2022
            Albany, New York

LAWRENCE E. KAHN

United States District Judge